**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

OWN CAPITAL, LLC,

        Plaintiff,

v.                                Case No. 11-10109

CELEBRITY SUZUKI OF ROCK HILL, LLC, and
HELMI FELFEL,

        Defendants.

_____/

**OPINION AND ORDER (1) DENYING DEFENDANTS' MOTION TO VACATE,**
**MODIFY, AND/OR CORRECT ARBITRATION AWARD, (2) DENYING DEFENDANTS'**
**EMERGENCY MOTION TO SEAL EXHIBITS, AND (3) LIFTING STAY OF THE**
**CONFIRMATION ORDER**

        Defendants have filed a motion to vacate or correct the arbitration award and an

"emergency" motion to seal or strike certain exhibits attached to Plaintiff's response to

that first motion.  Both motions have been fully, and thoroughly, briefed.  Oral argument

is not necessary to decide this dispute.  E.D. Mich. LR 7.1(f)(2).  The court will deny

both motions, and will vacate its order staying the enforcement of the confirmation order

of January 20, 2011.

**I. BACKGROUND**

        On or about August 15, 2008, Defendant Helmi Felfel signed a Promissory Note

("Note") and Personal Guaranty for Repayment of Cash Loan ("Guaranty").  In

exchange for the Note and Guaranty, Plaintiff lent Defendant Celebrity Suzuki of Rock

Hill, LLC, d/b/a Planet Suzuki ("Celebrity") $300,000.  (Mot. Vacate Exs. 1-2.)

Defendants agreed to repay the loan over a period of two years, with interest.  (*Id.*)

Defendants owed Plaintiff a monthly payment of $16,450 on the Note for 24 months, with the first payment due on September 15, 2008. (*Id.*) Celebrity made timely payments in full for the first eight months, including a $40,000 payment during the third month. (*Id.* Ex. 5.) No payment was received during the ninth month, and twelve of the next thirteen payments were in the amount of $1,000 (there was one $2,000 payment during this period). (*Id.*)

On May 20, 2010, Plaintiff sent a letter to Celebrity indicating it had defaulted on the Note. (Resp. Mot. Vacate 2.) On June 4, 2010, Plaintiff elected to pursue arbitration under the Note. (*Id.*) Settlement was proposed by Defendants, rejected by Plaintiff, and an arbitrator was selected. (*Id.*) Briefs were filed, and an arbitration hearing was held via telephone on September 17, 2010. (*Id.* at 3.) The arbitrator rendered an award in Plaintiff's favor ten days later in the amount of $261,052.21. (*Id.*)

Plaintiff filed this action on November 15, 2010, to confirm its arbitration award pursuant to 9 U.S.C. § 9. The court required Plaintiff to establish the court's subject-matter jurisdiction and to show that Defendants had been served with Plaintiff's application. Plaintiff filed a certificate of service that stated it had served Defendants personally on November 26, 2010.[1] Just before the certificate was filed, Defendants' counsel entered the case and filed a motion for an extension of time to respond to Plaintiff's application and for discovery, their clients having missed the deadline

---

[1] Interestingly, the certificate also indicates the application for confirmation was served by mail on November 9, 2010—six days before it was filed and this action commenced. While it is not the typical practice for a party to serve another with a motion *before* filing it, because personal service occurred after filing, the court does not examine the possible ramifications of service before filing.

according to the date of service averred by Plaintiff.  The court held a status conference with counsel in chambers, during which it decided that, per the court's December 22, 2010, order, which laid down the statutory procedures by which a confirmation order could be entered, and the certificate of service, the court was required to enter the confirmation order.  However, the court immediately stayed that order and set a briefing schedule for a motion to vacate.  Discovery was not permitted.

Defendants filed that motion on February 8, 2011.  A response followed on February 25, 2011, pursuant to the schedule set by the court.  On March 1, 2011, before the reply was due or had been filed, Defendants filed an emergency motion to seal or strike certain exhibits attached to Plaintiff's response on the basis that those exhibits violated Federal Rule of Evidence 408 because they disclosed or referenced settlement negotiations.  According respect to Defendants' depiction of the issue as an "emergency," the court directed Plaintiff to file a response, which it did on March 11, 2011.  Defendants filed a reply to the motion to vacate on March 4, 2011, and a reply to their emergency motion on March 18, 2011.

## II. STANDARD

"When courts are called on to review an arbitrator's decision, the review is very narrow; one of the narrowest standards of judicial review in all of American jurisprudence."  *Lattimer-Stevens Co. v. United Steelworkers of Am.*, 913 F.2d 1166, 1169 (6th Cir. 1990); *accord Nationwide Mut. Ins. Co. v. Home Ins. Co.* (*Nationwide IV*), 429 F.3d 640, 643 (6th Cir. 2005).  The scope of cognizable claims brought to vacate an award under the Federal Arbitration Act ("FAA") is narrow, and the Act is not an invitation for the defeated to appeal or relitigate their claims.  "[A]s long as the arbitrator

3

is even arguably construing or applying the contract and acting within the scope of his
authority, that a court is convinced he committed serious error does not suffice to
overturn his decision." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38
(1987); *accord Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1767
(2010). "A party must typically request vacation under the FAA, rather than try to attack
an arbitration agreement through breach-of-contract claims. However, a litigant can
attack the contract itself if there was any defect in the underlying agreement to arbitrate
the dispute." *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 304 (6th Cir. 2008) (internal
quotation marks and citations omitted).

The FAA by its own terms provides four grounds for vacating an arbitral award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or
either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone
the hearing, upon sufficient cause shown, or in refusing to hear evidence
pertinent and material to the controversy; or of any other misbehavior by
which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly
executed them that a mutual, final, and definite award upon the subject
matter submitted was not made.

9 U.S.C. § 10(a). In addition, the Sixth Circuit has held an award may be vacated
where an arbitrator exhibits "manifest disregard" for the law. *Nationwide IV*, 429 F.3d at
643.[2] "An award is in manifest disregard if '(1) the applicable legal principle is clearly

---

[2] The Supreme Court recently declared that "whether 'manifest disregard'
survives [its] decision" in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576
(2008), is an open question. *Stolt-Nielsen*, 130 S. Ct. at 1768 n.3 (internal quotation
marks omitted). Until rejected, however, that basis remains the law in this Circuit.

2:11-cv-10109-RHC-VMM   Doc # 26   Filed 05/25/11   Pg 5 of 22   Pg ID 454

defined and not subject to reasonable debate; and (2) the arbitrators refused to heed

that legal principle.'" *Nationwide Mut. Ins. Co. v. Home Ins. Co.* (*Nationwide III*), 330

F.3d 843, 847 (6th Cir. 2003) (quoting *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th

Cir. 2000)).

> The FAA also provides for the modification or correction of an award:
>
> (a) Where there was an evident material miscalculation of figures or an
> evident material mistake in the description of any person, thing, or
> property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to
> them, unless it is a matter not affecting the merits of the decision upon the
> matter submitted.
>
> (c) Where the award is imperfect in matter of form not affecting the merits
> of the controversy.

9 U.S.C. § 11.

> If the court must reach a state-law question, because, for example, it reads upon

"any defect in the underlying agreement to arbitrate," *Uhl*, 512 F.3d at 304, or upon the

jurisdiction of the arbitrator, the court sitting in diversity applies the law of the state in

which it sits. *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003) ("[W]e apply

the law, including the choice of law rules, of the forum state."); *see Legg v. Chopra*, 286

F.3d 286, 289 (6th Cir. 2002) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). In

Michigan, if the parties have chosen by contract to be bound by the law of another state,

that law should be applied unless

> (1) the chosen state has no substantial relationship to the parties or the
> transaction or (2) there is no reasonable basis for choosing that state's
> law. . . . [or (3)] it would be contrary to the fundamental policy of a state
> that has a materially greater interest than the chosen state in the
> determination of the particular issue and whose law would be applicable in
> the absence of an effective choice of law by the parties.

5

*Hudson v. Mathers*, 770 N.W.2d 883, 887 (Mich. Ct. App. 2009); *see Chrysler Corp. v.*

*Skyline Indus. Servs., Inc.*, 528 N.W.2d 698, 703 (Mich. 1995); *Turcheck v. Amerifund*

*Fin., Inc.*, 725 N.W.2d 684, 687-88 (Mich. Ct. App. 2006); *see also Uhl*, 512 F.3d at 302.

## III. DISCUSSION

### A. Emergency Motion

In their emergency motion to strike or seal certain exhibits attached to Plaintiff's

response that reference settlement offers, Defendants contend such offers are

inadmissible under Federal Rule of Evidence 408.  Rule 408, entitled "Compromise and

Offers to Compromise," provides:

> (a) Prohibited uses.  Evidence of the following is not admissible on behalf
> of any party, when offered to prove liability for, invalidity of, or amount of a
> claim that was disputed as to validity or amount, or to impeach through a
> prior inconsistent statement or contradiction:
>
>> (1) furnishing or offering or promising to furnish or accepting
>> or offering or promising to accept a valuable consideration in
>> compromising or attempting to compromise the claim; and
>>
>> (2) conduct or statements made in compromise negotiations
>> regarding the claim, except when offered in a criminal case
>> and the negotiations related to a claim by a public office or
>> agency in the exercise of regulatory, investigative, or
>> enforcement authority.
>
> (b) Permitted uses.  This rule does not require exclusion if the evidence is
> offered for purposes not prohibited by subdivision (a).  Examples of
> permissible purposes include proving a witness's bias or prejudice;
> negating a contention of undue delay; and proving an effort to obstruct a
> criminal investigation or prosecution.

Without an extended exegesis into the history and purpose of Rule 408, it is clear

that it does not apply to briefing on an application to vacate brought under the FAA.

Federal courts have taken great pains to indicate that the FAA is not a blank check to

6

relitigate liability, which was already determined by the arbitrator, who was (in the usual case) selected by the parties pursuant to contract. The purpose of the FAA is to encourage arbitration by displacing litigation in the courts with a more efficient avenue for dispute resolution. *See Hall St.*, 552 U.S. at 581, 588.

By providing for any review whatsoever, Congress made it possible that a district court could ultimately affect liability of the parties to an arbitration. Though the effect of resolving an application to vacate may be to alter liability, however, that does not mean that liability of the parties is at issue. In fact, it is not. The question for the district court is whether there is a defined and narrow basis for vacating an award. Thus, any mention of compromise attached to Plaintiff's filings were not "offered to prove liability for, invalidity of, or amount of a *claim*," Fed. R. Evid. 408(a) (emphasis added), but were instead offered to prove the validity of the arbitration and the absence of any statutory basis for vacatur or modification.

More troubling to the court than the resolution of this objection is the manner in which it was brought. Terms like "emergency" are used in court filings to indicate to the court that, without some immediate action, some harm—usually irreparable harm—will come to a party or other person interested in an action. An "emergency" filing to strike or seal a document usually means the public display of the document will cause some harm on its own. For example, a motion to strike or seal certain attachments would be appropriate if those documents disclosed a trade secret. Here, there was no such emergency. The best that could be said for Defendants' counsel is perhaps they thought, with Plaintiff's response filed, the court was on the verge of filing an opinion on the motion to vacate, and Defendants were concerned the court would base its decision

7

on inadmissible evidence.  If the circumstances were such, however, the court thinks

counsel would have rushed to finish their nine-page reply brief and filed it three days

earlier, rather than writing a fourteen-page emergency motion and filing it six days after

the purported emergency arose.

Even forgiving Defendants' casual use of "emergency," the court is puzzled as to

why any motion was filed asking to strike or seal exhibits.  This action involves only

legal questions for the court, and is not to be tried by a jury.  The Federal Rules of

Evidence serve a number of purposes, but the primary purpose is to keep classes of

information from jurors.  It is unnecessary to strike or seal exhibits when the court can

simply disregard them.

In short, the point on which Defendants filed a fourteen-page motion and a nine-

page reply, and which necessitated an additional filing from Plaintiff and additional fees

from all parties, could have been made in a single sentence in a reply to the motion to

vacate.

Defendants' motion will be denied.

### B. Motion to Vacate

The court counts five arguments offered by Defendants as to why the award

must be vacated or modified.  First, they say because Defendant Felfel did not sign the

Note in his individual capacity, but rather only as the principal of Defendant Celebrity

Suzuki of Rock Hill, the arbitrator "exceeded [his] powers," *see* 9 U.S.C. § 10(a)(4), by

rendering an award against him individually.  Second, they contend that the contractual

procedures for selecting an arbitrator were not followed, *see* 9 U.S.C. § 5, and relatedly

that the arbitrator exceeded his powers because he did not disclose other disputes

8

involving Plaintiff for which he was the arbitrator.  Third, they say that the arbitrator

exhibited "evident partiality."  *See* 9 U.S.C. § 10(a)(2).  Fourth, Defendants contend the

parties entered into an oral novation which replaced the original agreement.  Finally,

they argue the interest rate charged under the Note is usurious.

*1. Felfel's Liability*

Defendants first advance the argument that Felfel did not agree to arbitrate, and

so the arbitrator exceeded his authority by rendering a joint and several award against

Felfel.  *See* 9 U.S.C. § 10(a)(4); *see also Solvay Pharms., Inc. v. Duramed Pharms.,*

*Inc.*, 442 F.3d 471, 475 (6th Cir. 2006) (explaining that the rationale behind § 10(a)(4) is

that arbitration is more enticing if it can be "tailor[ed] . . . to . . . particular needs");

*Nationwide IV*, 429 F.3d at 643.  This statutorily-founded argument requires the court to

apply state law, since the agreements themselves must be interpreted to discern the

authority of the arbitrator.

As noted above, Michigan courts will enforce choice-of-law provisions in

contracts unless one or more of three exceptions is met.  Plaintiff and Defendant Felfel

have selected California law.  (Mot. Vacate Ex. 2 ¶ 11.)[3]  As there is no indication that

the parties had no reasonable basis for choosing California law or that California has no

substantial relationship to the parties, and because the parties have cited no public

policy of Michigan that would bar enforcing California law, the court finds the clause is

enforceable and will look to California to construe the agreement where necessary.

---

[3] The Note also contains a choice-of-law provision selecting California law.  (Mot.
Vacate Ex. 1 ¶ 16.)

"Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642.

> The general rule is that the terms of an extrinsic document may be incorporated by reference in a contract so long as (1) the reference is clear and unequivocal, (2) the reference is called to the attention of the other party and he consents thereto, and (3) the terms of the incorporated document are known or easily available to the contracting parties.

*DVD Copy Control Ass'n, Inc v. Kaleidescape, Inc.*, 97 Cal. Rptr. 3d 856, 870 (Cal. Ct. App. 2009); *accord Wolschlager v. Fid. Nat'l Title Ins. Co.*, 4 Cal. Rptr. 3d 179, 184 (Cal. Ct. App. 2003); *Shaw v. Regents of the Univ. of Cal.*, 67 Cal. Rptr. 2d 850, 856 (Cal. Ct. App. 1997). "The clear and unequivocal reference to the extrinsic document and the contemporaneous availability of its terms shows that, at the time of contracting, the parties consented to those terms." *DVD*, 97 Cal. Rptr. 3d at 870. Thus, an arbitration clause from an incorporated document is enforceable even where a party does not know that the document contains an arbitration clause. *Wolschlager*, 4 Cal. Rptr. 3d at 185. "All that is required is that the incorporation be clear and unequivocal and that the [party] can easily locate the incorporated document." *Id.*

The relevant part of the Guaranty states:

> Whereas Borrowers have received $300,000 from Orbach Waters, LLC, a California limited liability company whose principal executive office is located at 2212 Dupont Drive, Suite L, Irvine CA 92612 . . . the same to be evidenced by a promissory note in substantially the form attached hereto . . . which attachment is incorporated herein and made a part hereof by this reference . . . .

(Mot. Vacate Ex. 2 at 1.) Defendant Felfel signed the Guaranty, indicating his consent, which he does not challenge here. The document clearly and unequivocally

10

incorporates the Note, calls the Note to Felfel's attention, and by attaching the Note makes the terms of it readily available to both parties.  In addition, the arbitration clause by its terms governs "any dispute, claim, disagreement and/or controversy of any kind or nature, arising out of or relating in anyway to this transaction, its subject matter, its negotiation, execution, administration, default or termination"; in short, it governs disputes relating to Felfel as well.  (Mot. Vacate Ex. 1 ¶ 19.)  Thus, the arbitration clause was incorporated into the Guaranty, and Felfel was subject to arbitration.

That paragraph 12 requires the guarantor, Felfel, to submit to personal jurisdiction in California is not to the contrary.  The paragraph specifically notes that "the undersigned hereby agrees and consents . . . without limiting other methods of obtaining jurisdiction," such as by arbitration.  Even if that non-limitation phrase had not been included, paragraph 12 nowhere states that jurisdiction is exclusively in California, and so it is not a "mandatory" forum selection clause that excludes other forums; rather, it is a "permissive" clause that requires Felfel to submit to Californian jurisdiction in the event Plaintiff had chosen to file suit there.  *See Animal Film, LLC v. D.E.J. Prods., Inc.*, 123 Cal. Rptr. 3d 72, 76-77 (Cal. Ct. App. 2011) (explaining the difference between and collecting examples of permissive and mandatory forum selection clauses); *Berg v. MTC Elecs. Techs.*, 71 Cal. Rptr. 2d 523, 527-29 (Cal. Ct. App. 1998).  Moreover, supposing Defendants' reading of that paragraph was correct, and therefore the clause was in direct conflict with the Note's arbitration clause, the two provisions would have to be reconciled to "give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract."  Cal. Civil Code § 1652.  The reconciliation likely would not be favorable to Defendants' position.

11

Accordingly, the arbitrator had authority under the Guaranty and Note to render an award against Felfel.

### 2. Procedures for Selecting the Arbitrator

#### a. Section 5

Next Defendants argue, relying on the mandatory language of 9 U.S.C. § 5 that the selection method "shall be followed," that the award must be vacated because Plaintiff did not follow the Note's provision for selecting an arbitrator.  Plaintiff admits it did not.  However, Plaintiff contends Defendants waived this argument by stating they had no objections to the arbitrator.

The court agrees.  A party is subject to arbitration only because it freely and voluntarily agreed to it.  *Stolt-Nielsen*, 130 S. Ct. at 1773.  Thus, the power of the arbitrator, the type of arbitration, the matters submitted to arbitration, and the process by which the arbitrator is selected all arise from the contract.  *See, e.g.*, *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2777-78 (2010) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-85 (2002)) (explaining parties can even agree to arbitrate gateway questions of whether parties have agreed to arbitrate); *Stolt-Nielsen*, 130 S. Ct. at 1773-74.  In contracting, a party gains some rights in exchange for performing or promising to perform certain obligations.  Because rights that flow from a contract belong to a party, that party may, of course, waive those rights by "conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished."  *Sanchez v. Cnty. of San Bernadino*, 98 Cal. Rptr. 3d 96, 106 (Cal. Ct. App. 2009) (internal quotation marks and citations omitted).

12

Defendants undisputedly waived their right to object to the process by which the arbitrator was selected.  Defendants' counsel stated in a letter that they did not object: "If we are to proceed with the arbitration, we do not object to any of the arbitrators on your list."  (Resp. Mot. Vacate Ex. 4 at 2.)  Plaintiff avers Defendants' attorney "represented that he did not object to any of the arbitrator's [sic] listed" in "undocumented telephone conferences" as well.  (Resp. Mot. Vacate 2, 5.)  Defendants do not contest these facts.[4]  If Defendants objected to the method by which the arbitrator was selected, they should have said as much, or at least *not* have consented to the selection of any arbitrator.  Because they clearly manifested that consent, they have waived their contractual right to enforce the selection procedure.

Section 5's mandatory language does not affect this result.  Where a party has a contractual right to a selection process, it "shall be followed."  However, the court does not read section 5 to override the overarching purpose of the FAA.  As has been discussed above, the FAA exists to encourage parties to engage in arbitration by providing both a forum for confirmation and extremely limited bases for modification or vacatur.  In so encouraging, Congress did not intend to handcuff a party by eroding its fundamental ability to waive a right obtained under contract.

b. Section 10(a)(4)

---

[4]  It appears that Defendants waived their contractual right to object in response to the first selected arbitrator, who later disqualified himself.  (Resp. Mot. Vacate 2-3.) Because Defendants' waiver was unequivocal and not tied to the selection of any specific arbitrator, the timing of the waiver relative to the disqualification is immaterial.

13

Defendants present a related argument that the arbitrator exceeded his powers, 9 U.S.C. § 10(a)(4), because pursuant to paragraph 19 of the Note, the arbitrator was bound to "disclose any facts or circumstances likely to create a presumption of bias or prejudice." This subsection is typically invoked where the arbitrator renders an award that reaches beyond the authority designated him under contract.

> The terms of the contract define the powers of the arbitrator, and "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed a serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 . . . (1987). "[C]ourts must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious legal or factual error." *Id.* (emphasis added). And "[i]f a court can find any line of argument that is legally plausible and supports the award then it must be confirmed." *Merrill Lynch, Pierce, Fenner & Smith v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995).

*Solvay*, 442 F.3d at 476. However, the Seventh Circuit has recognized that an arbitrator may exceed his powers in the meaning of § 10(a)(4) where he has not disclosed information that is a condition precedent to appointment. *Sphere Drake Ins. Ltd. v. All Am. Life Ins. Co.*, 307 F.3d 617, 623 (7th Cir. 2002) ("A potential neutral may have contractual obligations to reveal information to those who select him. Failure to comply with a contractual requirement designed to facilitate the search for an acceptable neutral might imply that the neutral exceeded his authority, spoiling the award under 9 U.S.C. § 10(a)(4).").

In *Uhl*, the Sixth Circuit considered a similar argument, though it was styled as a claim in contract rather than one under § 10(a)(4). The contract provision at issue required party-selected arbitrators to "disclose to all parties any referral agreements, financial dealings, or other relationships with any of the parties or parties' attorneys that

14

could in any way be construed as a possible conflict of interest."  512 F.3d at 299

(internal quotation marks and citation omitted).  The court recognized that even though

arbitration awards usually must be challenged under the FAA rather than in a contract

action, an exception exists "if 'there was any defect in the underlying agreement to

arbitrate the dispute.'"  *Id.* at 304 (quoting *Corey v. New York Stock Exch.*, 691 F.2d

1205, 1212 (6th Cir. 1982)).  The arbitrator at issue did not disclose that he had worked

with plaintiff's counsel on past cases, *id.* at 299, 303-04, although it appears that the

defendant may have been aware of *some* prior relationship, *id.* at 299, 305 n.3.  The

court held that the defendant could not obtain rescission based on a theory of fraud in

the inducement.  *Id.* at 304-05.

        Consistent with *Uhl*, and assuming a claim of breach may be brought in the Sixth

Circuit under § 10(a)(4) on the theory that any authority exercised that flowed from the

breach exceeds the authority granted (that is, that where the procedures are not

properly followed, the arbitrator has *no* authority under the contract), the court rejects it.

California courts construe contract terms according to their plain meaning where that

meaning is unambiguous.  "The rules of construction generally applicable to contracts

govern the interpretation of both arbitration provisions and insurance policies, that is, we

interpret the words in their ordinary sense, according to the plain meaning a layperson

would attach to them."  *Gravillis v. Coldwell Banker Residential Brokerage Co.*, 49 Cal.

Rptr. 3d 531, 540 (Cal. Ct. App. 2006); *accord Hotels Nevada, LLC v. Bridge Banc,

LLC*, 30 Cal. Rptr. 3d 903, 906 (Cal. Ct. App. 2005) ("If contractual language is clear

and explicit, it governs." (citing Cal. Civ. Code § 1638)).  A *presumption* of bias or

prejudice is something more than the mere *appearance* of bias or prejudice.  Notably,

15

there is no evidence here that the arbitrator had engaged in a prior business relationship with Plaintiff, had served as Plaintiff's attorney in any matter, or was engaged in a surreptitious deal with Plaintiff to render awards in its favor in exchange for more appointments as an arbitrator.  While the court might think it a good practice for arbitrators to disclose past or concurrent arbitrations involving one of the parties, that fact or circumstance does not lead to a presumption of bias, any more than one could presume that a judge is biased when he renders a favorable decision for a litigant who had succeeded before him in the past.  While successive victories could be explained by bias, both *omnia praesumuntur rite esse acta* and Occam's Razor suggest that they are more likely to have resulted from a strong legal position.  A presumption of bias cannot be found here.

Critically, the obligation to disclose facts or circumstances likely to create a presumption of bias was imposed by contract *before* the arbitrator accepted appointment.  At the time the arbitrator was appointed, on July 17, 2010, he had not yet been appointed to any of the other cases Defendants cite.  (Resp. Mot. Vacate 3 n.3.)  Therefore, there is no evidence that the arbitrator withheld any information "likely to create a presumption of bias or prejudice" at the relevant time, and therefore any claim under § 10(a)(4) on this ground must be denied.[5]

*3. Evident Partiality*

_____

[5] Further, Defendants could have easily asked the arbitrator or Plaintiff whether he had served as an arbitrator for Plaintiff in the past or was currently acting as an arbitrator in other matters.  *See Uhl*, 512 F.3d at 305 n.3 ("[A]t any point [the defendant] could have requested that the arbitrators disclose conflicts in accordance with the agreement.").

16

Third, Defendants claim the arbitrator exhibited evident partiality on behalf of Plaintiff.  *See* 9 U.S.C. § 10(a)(2).  Defendants assert that the court should apply the "appearance of bias" standard for partiality, but argue that the arbitrator was partial even under the more strict "objective partiality" standard.  Plaintiff responds that the Sixth Circuit recognizes only the "objective partiality" standard, and there is no evidence that would permit a finding of partiality under that standard.

Contrary to Defendants' attempt to factually distinguish their case by relying on *Crow Construction Company v. Jeffrey M. Brown Assoc., Inc.*, 264 F. Supp. 2d 217 (E.D. Pa. 2003), the Sixth Circuit uses only the objective partiality standard.  *Uhl*, 512 F.3d at 305-08; *Nationwide IV*, 429 F.3d at 645.  The Circuit has repeatedly and explicitly rejected the "appearance of bias" standard used elsewhere.  *Uhl*, 512 F.3d at 306 ("Although Justice Black's meaning [where referring to "the appearance of bias" in the plurality opinion in *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145 (1968)] can hardly be questioned, that was not the standard that prevailed in this circuit."); *Nationwide IV*, 429 F.3d at 645; *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358 (6th Cir. 1989).  Thus, the court finds unpersuasive Defendants' attempt to distinguish this precedent based on whether the arbitrator is a "party" or "neutral" arbitrator.  *See Nationwide IV*, 429 F.3d at 644 n.5 (observing that "a majority of the court did not endorse the 'appearance of bias' standard" in *Commonwealth Coatings*, a case involving a neutral arbitrator).

"[T]he challenging party must show that a reasonable person would have to conclude that an arbitrator was partial to the other party to the arbitration."  *Uhl*, 512 F.3d at 306 (quoting *Apperson*, 879 F.2d at 1358) (internal quotation marks omitted).

17

> In order to sustain that burden, "the party asserting evident partiality must establish specific facts that indicate improper motives on the part of the arbitrator." It is not enough to demonstrate "an amorphous institutional predisposition toward the other side," because that would simply be the appearance-of-bias standard that [the Sixth Circuit has] previously rejected.

*Id.* at 306-07 (quoting *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 329 (6th Cir. 1998)).

The sum and substance of Defendants' argument is that the arbitrator selected here was serving as the arbitrator in four other matters involving Plaintiff while he was presiding over the arbitration at issue in this case, and that he rendered a decision in favor of Plaintiff in three of those cases prior to deciding this case.

These facts do not rise to the level of evident partiality. While involvement in past or concurrent arbitrations may create the impression of "an amorphous institutional predisposition," especially on the adversely affected parties, a reasonable person would not be compelled to conclude the arbitrator was partial. The arbitrator here may have ruled on similar or even identical contracts, but consistent rulings in favor of a party do not *necessarily* show bias—instead, they may also be viewed as consistent interpretation of the relevant contract provisions and even-handed application of the law. Therefore, Defendants have not met their high burden of showing that the arbitrator was evidently partial to Plaintiff in the underlying arbitration.

*Uhl* is again illustrative. There the court held there was no evident partiality where one arbitrator on a panel of three and one party's attorney "several years [before the arbitration] . . . were co-counsel on two cases and . . . on six other cases [the arbitrator] represented the plaintiff while [the attorney] represented the intervening

18

plaintiff." 512 F.3d at 307. The court left open the possibility that such facts could, in another case, lead to evident partiality, but said they did not lead to that conclusion in *Uhl*. *Id.* The court described the subject relationship as "trivial" and "insignificant," and therefore concluded that there was no evident partiality because "according to Justice White['s concurrence in *Commonwealth Coatings*] and our own precedent, *there is no duty to disclose if the relationship is trivial*." *Id.* (emphasis added); *see Apperson*, 879 F.2d at 1360.

The relationship described by Defendants is no less trivial than that in *Uhl*; in fact, it is more trivial because there is no allegation that the arbitrator and Plaintiff were in a business relationship or attorney-client relationship, or that Plaintiff's attorney and the arbitrator had been allied in past litigation; instead, the only evidence Defendants offer is that the arbitrator had been used more than once by Defendant as an arbitrator. Such a "relationship," if it can be called one, is trivial.[6]

### 4. Manifest Disregard

The last two grounds for relief asserted—that there was a novation, and that the interest rate charged was usurious—do not invoke any statutory basis for relief. Thus, they are only cognizable under the judicially-created "manifest disregard" avenue for vacatur. In addition, the latter argument regarding usury might be brought under Defendants' invitation to the court to modify the award under § 11. The court holds that neither of these arguments warrants vacatur or modification.

---

[6] Furthermore, it is not uncommon in litigation circles for arbitrators and mediators to be repeatedly employed; they are sought out precisely because of their expertise and experience. *See Nationwide IV*, 429 F.3d at 645-46 & n.8.

Fundamentally, both of these questions must be rejected because answers would require an analysis of the underlying liability of Defendants. That is, they ask the court to look to the nature of the substantive agreement and the applicable law rather than to a statutory basis for vacating or modifying the award.

*Dawahare* instructs that the court cannot vacate an award on the basis of manifest disregard unless "the arbitrators refused to heed [the applicable] legal principle." 210 F.3d at 669. "If a court can find any line of argument that is legally plausible and supports the award then it must be confirmed. Only where no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside." *Jaros*, 70 F.3d at 421. The record is scarce on the topic of whether the novation argument was considered and rejected, but as Plaintiff observes, the award discloses that the arbitrator considered the parties' arguments before deciding the matter. (Mot. Vacate Ex. 7.) As Defendants' acknowledge, the novation question is a fact-intensive one; there is no indication that the arbitrator refused to consider the possibility of a novation under California law, and it is not for this court to revisit the underlying merits. As long as the arbitrator "heed[ed]" the legal principle—and there is no evidence here that he did not—vacatur is not permitted. *See Nationwide III*, 330 F.3d at 847; *Dawahare*, 210 F.3d at 669 ("Arbitrators are not required to explain their decisions. If they choose not to do so, it is all but impossible to determine whether they acted with manifest disregard for the law."); *Jaros*, 70 F.3d at 421 ("Where . . . the arbitrators decline to explain their resolution of certain questions of law, a party seeking to have the award set aside faces a tremendous obstacle.").

20

The usury contention also fails.  Plaintiff asserts that the usury contention was not raised at the arbitration, (Resp. Mot. Vacate 14), Defendants do not contest that assertion, and therefore the arbitrator cannot have been said to ignore the applicable legal principle.  Consequently, the court need not determine whether the applicable usury laws are "clearly defined" or "subject to reasonable debate."  The argument under § 11 fairs no better.  Even if the usury argument could be construed as asserting "an evident material miscalculation," § 11(a), which the court thinks it cannot, since such a finding would require an interpretation of California law, the court could not grant relief because there is no record on which to judge the calculation.

Defendants have not presented evidence that the arbitrator manifestly disregarded the law, and as a result the award cannot be vacated on that basis.

## IV. CONCLUSION

Accordingly, for the reasons presented above, IT IS ORDERED that Defendants' motion to vacate, modify, and/or correct arbitration award and to vacate order confirming arbitration award [Dkt. # 19] is DENIED.

IT IS FURTHER ORDERED that Defendants' emergency motion to seal certain exhibits attached to and references made in Plaintiff's response [Dkt. # 21] is DENIED.

Finally, IT IS ORDERED that the stay imposed by the court's January 20, 2011, "Order . . . Staying Enforcement of the Confirmation Order" [Dkt. # 17] is LIFTED.

21

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  May 25, 2011

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, May 25, 2011, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\11-10109.OWNCAPITAL.DenyVacate.jmp.wpd